Good morning, Your Honors. Good morning. Matt Borden, and this is Tobias Rowe on behalf of Dr. Golden, who's also here in court. I would like to reserve some time. How much do you want? I'll try to help you, but you need to watch the clock. Okay. How much do you want to reserve? Probably three minutes. Okay, I'll try to help. Paragraph 7 is a restraint of substantial character because it restricts Dr. Golden from engaging in the practice of medicine. Well, let me just ask you this. If you look at paragraphs 7A and B, it does permit him to engage in the practice, even with CEP, if certain conditions are met, right? Well, it restricts him flatly from working in any facility that CEP is already working in. So that would be 160 facilities, according to the district court. So that alone is a restraint of substantial character under the test that was articulated by this court in Golden 1. Please go ahead. Our court left this open in terms of what it's going to mean because they said that we're sending it to the district court to determine in the first instance whether what had occurred in this case, in quotes, meaningfully restrains a person's ability to practice their profession or trade. They didn't decide this case. They had all the evidence that you have before us now, except for what happened with the district court afterwards before it. And they did not decide the issue. They sent it back for a factual determination. Now, in this case, the district court struck the evidence that your client tried to put in with respect to the alleged expansion plans of CEP. And I'm interested to, since we review the district court's imposition, if you will, of a settlement agreement under an abuse of discretion standard, what exactly do you think the district court did that abused its discretion upon remand? Well, I think the main thing that the district court did is it committed an error of law. Any standard that ‑‑ it's unclear exactly what standard the district court was applying for restraint of substantial character. But in Golden 1 itself, the court said, this prohibition extends to any restraint of substantial character, no matter its form or scope. But, counsel, the district court here referred to USS Posco Industries v. Case, which was decided afterwards. And it reviewed all of the cases, including Golden 1, and allowed a ‑‑ required a repayment of costs that an employer had incurred and found that didn't violate 16,600 of the Business and Professions Code. Under the circumstances, I'm interested to know, are you saying that unless we agree with you that the ‑‑ any, anything at all, that the smallest nature, notwithstanding Posco Industries, is a violation of Business and Professions Code, I think we're back to abuse of discretion. And you bear the burden of proof to show that the district court didn't do that. And you're saying it's entirely based on law. Is that correct? Correct. And there's two aspects to it, Your Honor. Just so the second aspect doesn't get lost. The first aspect is, yes, that is our position. There's no exceptions to 16,600. There hasn't been for 100 years of unbroken State law. I would disagree with ‑‑ What is it about this agreement that makes it violative of 16,600? It says that he can't take jobs that exist now. It says that in the future ‑‑ Does any agreement that says you can't work for this single employer violate that provision? Or is the scope of this one that's a problem? I would say both. I mean, I would say that any ‑‑ Any and the scope? That doesn't make any sense. Well, I would say any agreement would violate it. But Paragraph 7 doesn't say, you know, Dr. Golden, you can't just work for CEP for a period of one year in Oakland. It says he can't work at this broad range of facilities and he can't work at various facilities in the future. But permanency is a problem. Well, that's one problem. And this is the second aspect to our argument about the error of law that I didn't quite get to address with Judge Smith. The scope of this is broader than restrictive covenants that get allowed in jurisdictions, unlike California, that actually permit restrictive covenants. No geographical scope, no temporal scope. It exceeds any rational business purpose to protect trade secrets. And it would cause him to get fired from a number of facilities where he would never even be in contact with CEP in the future. And that's why ‑‑ that's a secondary type of abuse of discretion. Because no matter how you define restraint of substantial character, and I would submit once you start walking away from Edwards and once you start walking away from the plain language of the statute, there's very little guideposts. But if you look at the jurisdictions that do allow these types of things, this goes beyond what would be tolerated in those jurisdictions. If CEP were a very small company and had two facilities and no expansion plans, would it still be a violation of 16600? Yes. Yes, Judge Ikuda. And I have a small firm and I've thought about this. But in the context of these types of provisions, even if you're an employer and you win at trial, you do not get the right to permanently bar someone, blacklist someone, discriminate against someone, or otherwise say that they can't work for you just because they exercised their First Amendment right to seek redress from the courts. But those are other provisions of law that prevent you from doing that. Well, that is the policy thing. And I think that Judge White in the district court proceedings was concerned about this policy of settlement. And there's nothing to suggest that cases would not settle if these types of provisions are not allowed. And we've cited practitioner articles in our papers. And what they say is don't include these provisions in your agreements. And cases will settle. There's been no abatement of settlements since Golden One. They're just going to settle on different terms that comply with California law. But to follow up on Judge Ikuda's question, why does your position necessarily include small businesses that are less than 1 percent of the market? I mean, here you have a much bigger participant in the market that Dr. Golden is being prohibited from working for or anybody they contract with. Why do you need to condemn all agreements? I think it's we don't need to condemn all the agreements to win, as I pointed out. But I do think, you know, doctrinally, this is what's consistent with the way California has interpreted 16600. It has said there's no partial restraints, no narrow restraints, no, quote, unquote, reasonable restraints. This is Edwards. This is Chamberlain. And this is the plain language of the statute itself. But those cases deal with a very different factual situation than what you have here. It's very clear, as you point out, that when you have a covenant not to compete or when you have a bar that comes with the initial employment by a person, you have one kind of thing. In this case, you have a lawsuit that was brought, I believe, by Dr. Goldman. The parties hotly fought it. They negotiated it. They reached a settlement. It didn't get finalized in the sense of Dr. Goldman signing it. But these kinds of settlements occur all the time where people separate from businesses, and there are all kinds of restrictions. And most of them, they don't want people to come back and work for them. And that's never been, like, I don't think you can show me a case where B&P Section 16,600 has been applied to bar that kind of a settlement. Here, as I look at it, that's what you're dealing with. You've got a doctor who is not board certified who wants to be able to go in other areas, and I understand that, but he's been able to practice, he continues to be able to practice, and it's all based upon a speculation of what CEP may do. The evidence that CEP was going to do this was struck by Judge White. As far as I know, it was not objected to. But even if it were, you've got plain error review there or abusive discretion at best, and you don't have any evidence, if you will, that says that the concern that Dr. Goldman has is anywhere in the record that we can rely upon in terms of going forward. Well, the plain language of the contract itself bars him from working for a number of places in the future. It doesn't bar him. 7A and 7B says if you're there, you can stay there if you comply with certain things. It doesn't say he can't work there. If I read it correctly, I got it in front of me here. For example, if Goldman's limited right to work at an urgent care facility if acquired by CEP in the future, it goes down and it says if he's already working in urgent care that was not owned by CEP, the urgent care facility does not constitute or operate within the emergency room as defined and regulated by California law. Goldman has worked at the urgent care facility beyond his probationary period. In other words, there are some conditions he has to comply with, but he can't stay there. And they're just saying, hey, you know, we don't get along with Dr. Goldman. We don't want him working for us, but if he complies with these conditions in 7A and 7B, in future facilities, he can work there. What am I missing? There's a couple things. First of all, you know, this applies to facilities where he doesn't know anybody. I get that. But it says right here, it says the parties agree that if CEP contracts to provide services to or acquires rights in a facility at which Goldman is employed or rendering services as a hospitalist, which he's doing and that's part of the record, CEP has the right to and will terminate Dr. Goldman from any work as a hospitalist without any liability whatsoever. There's no exception. That's a flat categorical bar that violates 16600. What about A and B? A and B. Those have conditions. Those are some of the ones I talked about. A and B, you know, they impose their own types of restraints, but I don't think that they modify. I think it says that, you know, under the plain language of Section 7 that they can terminate him. So we've let you go over your time, so we'll give you a little bit more. But I want to be sure I understand. You're saying that unless we construe B and P Section 16600 to mean that any limitation of any kind, including what the case that the Court of Appeals decided recently, which is, hold on a second. POSCO? Yeah, POSCO. Can I discuss that for a moment? Sure, go ahead. POSCO dealt with a situation where someone worked for a union, and he wanted to get specialized training, and this was not part of his job or anything. And they said, okay, you can get this 160 hours of specialized training, but as you continue to work here, you're going to have to pay us back for it, and if you leave early, you're going to have to repay us. That's more like a student loan. It didn't say that this worker was not free to go down the street and work anywhere he wanted. That's what Paragraph 7 says. It says there's at least 160 facilities now, and there could be more in the future, and as these facilities change and as Dr. Goldman's facility where he works changes, he's going to be increasingly restricted, and he's never going to have any certainty in where his career goes. And this is not an agreement simply. If he had said, I agree not to work for CEP anymore, or I agree not to work for CEP in Oakland for the next year, those are different scenarios, but that's not the one we have here. But bottom line is, from your perspective, any restriction of any kind, however limited, is barred under B&P Section 16,000. Is that right? That is right, and I think that's what the case is saying. How is that consistent with the cases? Isn't the standard from the cases a restraint of substantial character? Isn't substantial part of the test? And if that's true, that means some things would not be substantial. Well, that test came from Chamberlain, and what the Court said in Chamberlain was the test. Well, the test is you can't restrain anybody from working in their profession, but also in that case they were dealing with a liquidated damages provision, not the classic kind of restraint that says you can't work here. And what the Court said, well, we're going to have to analyze whether that liquidated damages amounts to a restraint of substantial character, where it's the functional equivalent of saying, you know, Augustine, you can't work here. So if a three-person law firm in San Francisco winds up with someone being discharged and having an agreement that says that they can't work at that law firm, that's a substantial restraint, a restraint of substantial character. There are thousands of law firms in the State and in San Francisco itself. How is that substantial? But this is getting back to the it's a narrow restraint, and this is the standard that the Supreme Court in Edwards rejected. It was the standard that the Ninth Circuit had adopted in a case called Campbell, and the California Supreme Court said, no, that's not the way it works here. 16600 has had amazing economic benefits in the State of California, and it's not appropriate for federal courts to start carving exceptions into this statute. We appreciate your argument, and we'll now hear from opposing counsel. Thank you. May it please the Court, my name is Sarah Robertson, and I represent the appellees including California Emergency Physicians Medical Group. What we just heard was appellant's counsel attempting to re-argue the Golden 1 decision. If this provision, the challenged provision, Section 7 of the Settlement Agreement, if it could have been ruled upon without any facts whatsoever, Golden 1 would have done that. But that's not what Golden 1 said. Golden 1 said that the matter was remanded to the district court for fact finding as to whether this particular provision constitutes a restraint of a substantial character. It does not. And there are some facts that are very, very important that were developed in the record below that bear a quick summarization now. The question was in the context of Dr. Golden's particular medical practice and the work that CEP does, does the challenged provision of the Settlement Agreement impose a restraint of a substantial character? So what's in the record about Dr. Golden's own medical practice is that he is not an emergency medicine physician. But he's a hospitalist, and the paragraph 7 addresses that. Yes. So let's go to that. Dr. Golden's declaration indicates that he is performing hospitalist services at a Sutter location in Lakeport, California up by Clear Lake. The argument that's advanced by appellant here is that if CEP has any contract anywhere in the state where they staff a facility that has the name Sutter on the side of the building, that somehow the Settlement Agreement between CEP and Dr. Golden would allow CEP to reach up to Lakeport in a completely different facility and somehow terminate him from working as a hospitalist in that facility. It must give you something. I mean, presumably it's not that hard to choose not to hire Dr. Golden if he applies to one of CEP's facilities. Isn't what you really get from this agreement the ability to get rid of him if CEP enters into a contract with or requires some facility where he's working? Isn't that what you're really after in this agreement and why you're fighting so hard for it? That is what the idea of Section 7 was. And if you look at the way the settlement was put on the record orally in front of Magistrate Ryu as well as Section 7 itself, it's talking about CEP coming into a facility, picking up a contract to provide services, and then in a situation where it might inherit Dr. Golden back as its own either employee or partner because he's working in the operational unit where CEP is picking up the contract. It's clear from the plain meaning of Section 7 that that's what was contemplated here. Not that CEP could somehow terminate Dr. Golden from a contract that it didn't have anything to do with, only that CEP would come in if it picked up a contract where Dr. Golden was already performing services, and in some cases it would have the right to let him go. In other cases, as noted by Justice Smith, it would retain him if certain conditions were met. I just want to be sure I understand. I apologize. With 7A and 7B, as I read them, Dr. Golden can remain employed by an entity or practice that's acquired by CEP provided that he complies with the conditions of 7A and 7B. Is that correct? That's just about correct, Your Honor. The way these situations work, and there's facts in the record about it, because of California's prohibition of the corporate practice of medicine, the medical groups that staff these hospitals, they don't actually own the entity that is providing the services. They come in on a contract with a hospital or a hospital system, and they, in general, will exclusively, in this context, employ all the health care providers that are performing the services under the contract. But, yes, you're correct. So it isn't a complete prohibition. I'm sorry. Go ahead. Just sort of following up on that, how much weight should we give to this argument about speculation, the speculation of whether Dr. Golden would be fired? What we're talking about here is California public policy, and isn't that really based on what the language of the agreement is? It is. I mean, should we really be engaging in, oh, will CEP actually fire Dr. Golden in this circumstance? Isn't it really the language of the agreement that we should look at? It is the language of the agreement that we should look at. Doesn't that give CEP the ability to fire him in many circumstances, and certainly not to hire him? Isn't that what the agreement is for? I would agree with you, except that you say in many circumstances, because of the factual record that's been developed after remand. Because Dr. Golden has testified and provided multiple indicia that he does not practice an emergency medicine, he's not board certified, didn't do a residency, isn't applying for those jobs, and then affirmatively stated when asked at his deposition, you know, does your CV accurately encompass the scope of your practice? He said, I don't practice emergency medicine anymore. So if we leave that to the side, the 160 facilities, this goes to the many aspect of what you just said, the 160 facilities, first of all, is all of the facilities that CEP has a contract with, but the testimony in the record is that about 80% of what CEP does is emergency medicine, hence the name, California Emergency Physicians. And he would, by his own admission, not be eligible, probably because he's not board certified, to practice in that area, right? Right. That is not his practice of medicine. So how would it work functionally? Just walk me through how it would work. So if CEP then enters into some agreement with Sutter, where Dr. Golden is currently working, then how would the contract apply? So there is testimony in the record in about pages roughly 210 to 215. One of the declarations indicates how that works when CEP comes in. They come in, if they take over an existing contract, then they have the option to either hire for themselves or bring on as partners the physicians who are already providing services there, or sometimes that medical group will stop providing services and CEP supplies its own medical providers to staff the contract. But that's exactly the situation that could be presented if Dr. Golden were already working at a facility where CEP came in to take over the contract by which he would be working. Let's assume for a moment that Dr. Golden could work in these facilities. Isn't barring him from working in all the facilities that CEP owns or has some relationship with a substantial infringement? Isn't it a restraint of substantial character? That's a lot of the facilities in California, isn't it? So no, because Dr. Golden's particular medical practice only overlaps with anything that CEP does in two situations, hospitalist or urgent care. And the testimony in the record is that there are eight sites in the entire state of California where CEP's contract includes the provision of hospitalist services and nine urgent care centers in the northern California where CEP provides urgent care services. So as to those eight facilities where CEP provides hospitalist services, Dr. Golden couldn't work, but by virtue of Section 7, is that correct? Well, in fact, Dr. Golden couldn't work there by virtue of the fact that the evidence in the record shows that in all eight of those sites, board certification in some specialty is required. So he couldn't work in those sites for a different reason that has nothing to do with Section 7. It sounds like you're saying you don't need this agreement and it won't be enforced. If that's the case, why are you here fighting about it? It must be important to you. It's to keep him from working with CEP. So, as you know, the settlement was put on the record and agreed to in 2011. We were talking about gazing into the crystal ball back then, six-plus years ago. But that was a material term to the agreement, and it doesn't impose a restraint of a substantial character, as it turns out. If we said this does violate 16600, it would make no difference to CEP. Is that correct? So if we said it's invalid, then what would happen? If we said Paragraph 7 was invalid, then what would happen? If you said Paragraph 7 was invalid, it would invalidate the entire settlement agreement. And that's why. It's not a material term you just said. No, we said that it was a material term to the settlement. But you're now saying that it's not. I'm not saying that. Well, then why is it material if it doesn't have any effect on CEP's practices? That was Judge Bates' question. So the record that has been developed after remand shows that there isn't overlap between Dr. Golden's medical practice and that of CEP, such that the agreement in operation is not a restraint of a substantial character. So it's basically because of the facts developed after the remand that this takes on a different hue. You know more about Dr. Golden's practice. It turns out that in reality there's nothing on the record that talks about what CEP is likely to do in the future, and you also know the exact nature of Dr. Golden's practice, and he's been able to operate, I gather, with increasing financial success since 2011. Yes, Justice Smith, I would agree with that, except that there is information in the record about CEP's future plans. And what that information is is that it does not plan to grow significantly in Northern California, and also that nearly every practitioner working for CEP on any contract of any kind is now required to be board certified, such that now that we are in 2017 evaluating the situation, there simply is no restraint, let alone a restraint of a substantial character. And the board certification requirement, is that something that comes from CEP, or is that just the medical profession generally and that's their requirement? This is also in the record. And what the CEP physicians testified in their written testimony was that they contract with these hospital systems, and it would be the hospital system who has the board certification requirement, and then nearly always will impose that on CEP and say our entire hospital requires this board certification, so your operating unit of the hospital that you're going to staff with physicians must abide by that. So that would be a negotiable term, in other words? Usually not, because if the entire system, I mean truly, if the entire system requires board certification, CEP won't be in a position to seek a variance from that, and the testimony that's in the record is normally, it's actually the hospital that seeks a variance from it, because they have some provider already working who they'd like to keep notwithstanding board certification. I'm not sure you said this, but let me ask you. Are you saying that perhaps this agreement might have violated 16-600 or be more problematic at least when it was entered, but that the way the facts have developed since, it is not as problematic? Is that an argument? Well, not quite. I wouldn't have ever have said that the agreement violates. That's why I said problematic versus more problematic. I think that if we were in a situation where Dr. Golden practiced emergency medicine and if the world had evolved in such a way that CEP had all the emergency medicine jobs in Northern California, that would be a very different case. That would be a restraint, but that's not what we have here. What we have is a divergence between Dr. Golden's practice and that of CEP, such that this is not a restraint on him. And from your perspective, is it correct to say that in this case, the district judge's work is to be reviewed by us for abuse of discretion? Yes, that's correct. To send it back to Judge White to make primarily a factual determination. He did that. Obviously, Dr. Golden doesn't agree with what he did, but from Judge White's perspective, with the evidentiary rulings that he made, he felt it was not a substantial restraint. Do we review that for abuse of discretion? You do, and the factual findings under the second prong of abuse of discretion are reviewed under the clearly erroneous standard, and clearly the facts that were found in the court below were not clearly erroneous. The facts are reviewed for abuse of discretion, but is the question of whether it's a restraint of substantial character a question of law or a factual question reviewed for abuse of discretion? In this context, we submit that it is predominantly a factual inquiry because the facts are so clear here that this is not a restraint, that that is the predominant way that this issue gets decided. What do we do about the language in Golden 1 where we question whether Hasse would survive Edwards, that even the requirement to reimburse a training expense could impose a meaningful obstacle to employee mobility? So we interpreted California law as setting a very low bar for what constitutes a restraint. Well, we have the POSCO case and we have the Hasse case. POSCO was before, I mean, Hasse was before Edwards, and we said Hasse maybe is a misinterpretation of Edwards. So we're bound by our own precedent, of course. Of course. But Hasse is still good law in California. As is Golden 1. Indeed. Okay. Thank you. My colleagues have more questions. We thank both counsel. We realized we could go on and talk about this for a long time, but you both had a lot more time than we normally allow, so we appreciate your briefs, we appreciate the arguments, and we will take this case under advisement and rule as soon as possible. Thank you very much.
judges: M. Smith, Ikuta, Bates